UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SOUTH SHORE VILLAGE CONDOMINIUM ASSOCIATION, ENVINE, LLC, and STUART HERSHMAN, ANN-MARIE HERSHMAN, BILL NELLE, LAURI NELLE, ANDY SCOPPETTI, ELAINE SCOPPETTI, TOM ELDER, NORA ELDER, DAVID LUBANKO, MARGERY LUBANKO, THOMAS TAMAYO, THERESA TAMAYO, PAT GILLESPIE, MARYANN GILLESPIE, JIM KIERNAN, CAROL KIERNAN, KATHY MIS, JIM KITTELSON, JACKIE KITTELSON, GARY SMITH, JUDY SMITH, JEANNE RODRIGUES, KEVIN BEASLEY, MARY BEASLEY, FRANK KOWAL and CHERYL KOWAL, individually and on behalf of a class of persons similarly situated, <br>  Plaintiffs, <br><br>v. <br><br>RITZ-CRAFT CORPORATION OF PENNSYLVANIA, INC., <br>  Defendant. | Civil Action No. |

## **PARTIES**

1. Plaintiff, South Shore Village Condominium Association, is a domestic corporation with a principal place of business in Warwick, Rhode Island.

2. Plaintiff, Envine, LLC ("Envine"), is a domestic limited liability company with a principal place of business in Charlestown, Rhode Island.

3. Plaintiff, Stuart Hershman, is a resident of the state of Rhode Island residing at 115 Chickadee Lane, Wakefield, Rhode Island.

4. Plaintiff, Ann-Marie Hershman, is a resident of the state of Rhode Island residing at 115 Chickadee Lane, Wakefield, Rhode Island.

1

5. Plaintiff, Bill Nelle, is a resident of the state of Rhode Island residing at 229 Chickadee Lane, Wakefield, Rhode Island.

6. Plaintiff, Lauri Nelle, is a resident of the state of Rhode Island residing at 229 Chickadee Lane, Wakefield, Rhode Island.

7. Plaintiff, Andy Scoppetti, is a resident of the state of Rhode Island residing at 221 Chickadee Lane, Wakefield, Rhode Island.

8. Plaintiff, Elaine Scoppetti, is a resident of the state of Rhode Island residing at 221 Chickadee Lane, Wakefield, Rhode Island.

9. Plaintiff, Tom Elder, is a resident of the state of Rhode Island residing at 149 Chickadee Lane, Wakefield, Rhode Island.

10. Plaintiff, Nora Elder, is a resident of the state of Rhode Island residing at 149 Chickadee Lane, Wakefield, Rhode Island.

11. Plaintiff, David Lubanko, is a resident of the state of Rhode Island residing at 145 Chickadee Lane, Wakefield, Rhode Island.

12. Plaintiff, Margery Lubanko, is a resident of the state of Rhode Island residing at 145 Chickadee Lane, Wakefield, Rhode Island.

13. Plaintiff, Thomas Tamayo, is a resident of the state of Rhode Island residing at 143 Chickadee Lane, Wakefield, Rhode Island.

14. Plaintiff, Theresa Tamayo, is a resident of the state of Rhode Island residing at 143 Chickadee Lane, Wakefield, Rhode Island.

15. Plaintiff, Pat Gillespie, is a resident of the state of Rhode Island residing at 139 Chickadee Lane, Wakefield, Rhode Island.

16. Plaintiff, Maryann Gillespie, is a resident of the state of Rhode Island residing at 139 Chickadee Lane, Wakefield, Rhode Island.

17. Plaintiff, Jim Kiernan, is a resident of the state of Rhode Island residing at 131 Chickadee Lane, Wakefield, Rhode Island.

18. Plaintiff, Carol Kiernan, is a resident of the state of Rhode Island residing at 131 Chickadee Lane, Wakefield, Rhode Island.

19. Plaintiff, Kathy Mis, is a resident of the state of Rhode Island residing at 79 Chickadee Lane, Wakefield, Rhode Island.

20. Plaintiff, Jim Kittelson, is a resident of the state of Rhode Island residing at 7 Chickadee Lane, Wakefield, Rhode Island.

21. Plaintiff, Jackie Kittelson, is a resident of the state of Rhode Island residing at 7 Chickadee Lane, Wakefield, Rhode Island.

22. Plaintiff, Gary Smith, is a resident of the state of Rhode Island residing at 8 Chickadee Lane, Wakefield, Rhode Island.

23. Plaintiff, Judy Smith, is a resident of the state of Rhode Island residing at 8 Chickadee Lane, Wakefield, Rhode Island.

24. Plaintiff, Jeanne Rodrigues, is a resident of the state of Rhode Island residing at 104 Chickadee Lane, Wakefield, Rhode Island.

25. Plaintiff, Kevin Beasley, is a resident of the state of Rhode Island residing at 134 Chickadee Lane, Wakefield, Rhode Island.

26. Plaintiff, Mary Beasley, is a resident of the state of Rhode Island residing at 134 Chickadee Lane, Wakefield, Rhode Island.

27. Plaintiff, Frank Kowal, is a resident of the state of Rhode Island residing at 113 Chickadee Lane, Wakefield, Rhode Island.

28. Plaintiff, Cheryl Kowal, is a resident of the state of Rhode Island residing at 113 Chickadee Lane, Wakefield, Rhode Island.

29. The individual-named Plaintiffs bring this action in their individual capacity and on behalf of those similarly situated who were residents of the South Shore Village Condominiums.

30. Defendant, Ritz-Craft Corporation of Pennsylvania, Inc. ("Ritz-Craft"), is a domestic corporation with a principal place of business in Mifflinburg, Pennsylvania.

## **JURISDICTION AND VENUE**

31. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in dispute is over $75,000.

32. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## GENERAL ALLEGATIONS

33. In or around 2017, Ritz-Craft marketed, designed, manufactured, sold, and distributed numerous modular homes to the South Shore Village Condominiums on Chickadee Lane in Wakefield, Rhode Island. These modular homes included Infinity Walk-In Tile Showers ("Infinity Showers") that were designed and manufactured exclusively by Ritz-Craft.

34. Ritz-Craft's promotional literature/materials represented that "these walk-in showers in your new Ritz-Craft home will greatly increase the aesthetic appeal of your master retreat and, when the time comes, will make your home more desirable during the selling process."

35. Unbeknownst to the Plaintiffs, the Ritz-Craft Infinity Showers were improperly marketed, designed, manufactured, and/or distributed.

36. The Ritz-Craft Infinity Showers contained significant design and/or manufacturing defects.

37. The Infinity Showers have leaked, resulting in significant water infiltration and hazardous mold-related issues.

38. During the removal and repair process, it was determined by a licensed mold-remediation contractor that nails had penetrated the shower pan and that hazardous mold developed around the enclosure.

39. The Plaintiffs incurred significant costs to repair and remediate the water infiltration and hazardous mold.

40. The water infiltration and hazardous mold also caused extensive disruption and distress to the Plaintiffs.

41. The Plaintiffs promptly notified Ritz-Craft of the existence of these defective Infinity Showers.

42. Thereafter, the parties participated in a joint evidence inspection at the condominium complex. Ritz-Craft and the Plaintiffs each had an expert attend the inspection.

43. During the inspection, moisture readings demonstrated 100% moisture on the exterior surface of the showers. Wetness of the shower walls was observed visually as well.

44. The inspection also demonstrated that the Infinity Shower enclosures included sheetrock walls which permitted the water to "wick" up the sheetrock and seep into the studs. It was further revealed that Ritz-Craft used only waterproof tape on the seams associated with the sheetrock.

45. The inspection of the condominium units confirmed that the Infinity Showers were defective and needed to be replaced.

46. The Infinity Shower enclosure system lacked either: (1) a soldered/cooper pan; (2) Schluter system; or (3) a precast fiberglass shower pan.

47. The defects in the Infinity Showers have caused significant damage and resulting loss to the Plaintiffs. The cost of repairing and replacing the Infinity Showers will exceed $25,000 per Infinity Shower.

48. Ritz-Craft's interference with and/or diminution of Plaintiffs' enjoyment of their property has resulted in inconvenience, discomfort, and annoyance to the Plaintiffs.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs bring all claims individually and pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P 23(a) and (b)(3) are met with respect to the Classes defined below.

50. Plaintiffs propose a Rule 23(b)(3) "Damages Class" defined as follows: All persons who resided at the South Shore Village Condominiums from 2017 to the present who had a Ritz-Craft Infinity Shower in their condominium unit.

## RULE 23(a) and (b)(3) CRITERIA

51. <u>Numerosity</u>: Plaintiffs are informed and believe that Ritz-Craft is aware of at least fourteen (14) potential claims involving residences at South Shore Village Condominiums containing at least one Infinity Shower. Upon information and belief, the current number of impacted residents is estimated to exceed forty (40), and many, if not all, of those persons are likely members of the Class, making joinder of all Class Members impracticable.

52. <u>Commonality</u>: Questions of law and fact are common to the Plaintiffs and the Damages Class, and predominate over questions affecting only individual members, including, inter alia, the following:

    a. Whether Ritz-Craft failed to properly design, manufacture, market, sell, and/or distribute Infinity Showers.

    b. Whether Ritz-Craft's Infinity Showers were defective, inherently unsafe and hazardous, unreasonably dangerous, and/or not suitable for their intended uses.

    c. Whether the Plaintiffs and the members of the Damages Class are entitled to damages.

53. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class described above, and arise from the same events, actions, and/or course of conduct by Ritz-Craft. The relief Plaintiffs seek is typical of the relief sought for the absent Class Members.

54. <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of all absent Class Members. Plaintiffs are represented by counsel competent and experienced in class action litigation.

55. <u>The prerequisites of Rule 23(b)(3), Predominance and Superiority, are Satisfied for the Damages Class</u>: Plaintiffs and the Class Members have all suffered damages as a result of Ritz-Craft's acts or omissions. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

56. The prosecution of separate actions by the individual Class Members would create a risk of inconsistent and varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Ritz-Craft. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

57. Ritz-Craft's actions are generally applicable to the Class as a whole, and Plaintiffs seek damages on behalf of (b)(3) classes.

## COUNT I
## NEGLIGENCE V. RITZ-CRAFT

58. Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in all of the preceding paragraphs as if expressly re-written and set forth herein.

59. The aforesaid water infiltration and resulting damages incurred by the Plaintiffs were proximately and directly caused by the negligence and breaches of duty owed by Ritz-Craft, its agents, servants, and/or employees, including, but not limited to, the following:

   a. Failing to properly design the Infinity Showers and/or its component parts;

   b. Failing to properly manufacture the Infinity Showers and/or its component parts;

   c. Failing (during the construction process) to properly inspect the water integrity of the condominium units before tiling occurred;

   d. Failing to adequately test the Infinity Showers and/or its component parts to assess, determine, eliminate, and/or reduce the risk and/or likelihood of hazards or damages;

   e. Placing in the channels of trade a product that Ritz-Craft knew or with reasonable care, should have known, was defective and/or would not function properly in normal use;

   f. Placing in the channels of trade a product that Ritz-Craft knew or with reasonable care, should have known, was unreasonably dangerous and/or unsafe;

   g. Marketing an inherently unsafe and/or dangerous product;

   h. Misrepresenting that the Infinity Showers were safe when Ritz-Craft knew or should have known that the Infinity Showers were dangerous and/or unsafe;

   i. Failing to warn consumers such as the owners of South Shore Village Condominium residences that the Infinity Showers would fail and cause water infiltration and/or hazardous mold;

   j. Failing to make appropriate recommendations concerning the use and/or maintenance of the Infinity Showers;

7

    k. Failing to properly withdraw and/or recall the Infinity Showers and/or its component parts from the marketplace;

    l. Failing to comply with applicable federal, state, and/or municipal statutes and/or regulations concerning the design, manufacture, marketing, sale, and/or distribution of the Infinity Showers; and,

    m. Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

WHEREFORE, Plaintiffs demand judgment against Ritz-Craft in an amount that will adequately compensate Plaintiffs for their losses, together with interest, fees and costs.

## COUNT II
## BREACH OF WARRANTIES V. RITZ-CRAFT

60. Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in all of the preceding paragraphs as if expressly re-written and set forth herein.

61. Ritz-Craft designed, manufactured, marketed, sold, and/or distributed the Infinity Showers and/or its component parts.

62. Ritz-Craft expressly and impliedly warranted to the general public, including the condominium owners, that the Infinity Showers were safe, merchantable, and/or fit for their intended uses. At all relevant times, Ritz-Craft was a merchant with respect to goods of the kind involved in the water infiltration. Ritz-Craft knew or had reason to know of the particular purpose for which the goods were required, and that the Plaintiffs were relying on Ritz-Craft's skill, expertise, and/or judgment to select and/or furnish suitable goods.

63. Ritz-Craft also knew or had reason to know that the Plaintiffs and those using the Infinity Showers relied on the warranties made by Ritz-Craft.

64. Ritz-Craft breached its warranties because the Infinity Showers were unsafe, not of merchantable quality, and/or unfit for their intended uses and purposes.

65. The damage and destruction to, and the loss of use of, real and personal property of the Plaintiffs, was a direct and proximate result of the breaches of warranties by Ritz-Craft. Due notice has been given to Ritz-Craft of its breaches of warranty.

66. As a direct and proximate result of the aforesaid water infiltration, Plaintiffs have incurred costs and suffered damages.

WHEREFORE, Plaintiffs demand judgment against Ritz-Craft in an amount that will adequately compensate Plaintiffs for their losses, together with interest, fees and costs.

## COUNT III
## PRODUCT LIABILITY/STRICT LIABILITY V. RITZ-CRAFT

67. Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in all of the preceding paragraphs as if expressly re-written and set forth herein.

68. Ritz-Craft designed, manufactured, marketed, sold, and/or distributed the Infinity Showers, and/or its component parts, with inadequate warnings and/or in a defective and/or unreasonably dangerous condition, in each of the following ways:

    a. Failing to properly design the Infinity Showers and/or its component parts;

    b. Failing to properly manufacture the Infinity Showers and/or its component parts;

    c. Failing (during the construction process) to properly inspect the water integrity of the condominium units before tiling occurred;

    d. Failing to adequately test the Infinity Showers and/or its component parts to assess, determine, eliminate, and/or reduce the risk and/or likelihood of hazards or damages;

    e. Placing in the channels of trade a product that Ritz-Craft knew or with reasonable care, should have known, was defective and/or would not function properly in normal use;

    f. Placing in the channels of trade a product that Ritz-Craft knew or with reasonable care, should have known, was unreasonably dangerous and/or unsafe;

    g. Marketing an inherently unsafe and/or dangerous product;

    h. Misrepresenting that the Infinity Showers were safe when Ritz-Craft knew or should have known that the Infinity Showers were dangerous and/or unsafe;

    i. Failing to warn consumers such as the owners of South Shore Village Condominium residences that the Infinity Showers would fail and cause water infiltration and/or hazardous mold;

    j. Failing to make appropriate recommendations concerning the use and/or maintenance of the Infinity Showers;

    k. Failing to properly withdraw and/or recall the Infinity Showers and/or its component parts from the marketplace;

    l. Failing to comply with applicable federal, state, and/or municipal statutes and/or regulations concerning the design, manufacture, marketing, sale, and/or distribution of the Infinity Showers; and,

    m. Otherwise failing to exercise reasonable care under the circumstances that then and there existed.

69. The damage and destruction to, and the loss of use of, real and personal property of the Plaintiffs, was a direct and proximate result of Ritz-Craft's failure to adequately warn and/or by virtue of the Infinity Showers' defective and/or unreasonably dangerous condition.

70. As a result of the aforesaid water infiltration, Plaintiffs have incurred costs and suffered damages.

WHEREFORE, Plaintiffs demand judgment against Ritz-Craft in an amount that will adequately compensate Plaintiffs for their losses, together with interest, fees, and costs.

## COUNT IV
## VIOLATION OF R.I.G.L. § 6-13.1-1 *ET SEQ.* V. RITZ-CRAFT

71. Plaintiffs repeat, re-allege, and incorporate by reference the allegations contained in all of the preceding paragraphs as if expressly re-written and set forth herein.

72. In violation of G.L. 1956 § 6-13.1-1 et seq., Ritz-Craft has engaged in unfair trade practices; to wit, Ritz-Craft's goods and/or services are not of the particular standard, quality, or grade, or that goods are of a particular style or model that Ritz-Craft has represented.

73. Plaintiffs have sustained damages as a result of Ritz-Craft's unfair trade practices.

74. Plaintiffs have been required to retain the services of an attorney to commence this action and are entitled to attorney's fees and costs.

75. Plaintiffs are entitled to punitive damages as a result of Ritz-Craft's unfair trade practices.

WHEREFORE, the Plaintiffs respectfully demand that judgment enter on their behalf and against Ritz-Craft in the maximum amount allowed by law, including punitive damages, plus interest, costs, and reasonable attorney's fees, and all other amounts that are recoverable by law. Furthermore, the Plaintiff request such other relief that the Court deems just and proper.

## **DEMANDS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this honorable court:

1. Enter a judgment against the Defendant declaring it legally and financially responsible for the damages the Plaintiffs sustained or incurred;

2. Award the Plaintiffs compensatory and punitive damages against the Defendant in an amount equal to the damages incurred and suffered;

3. Award the Plaintiffs costs of suit, including attorneys' and expert witnesses' fees;

4. Award the Plaintiffs interest, including but not limited to, pre-judgment interest; and,

5. Fashion such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

The Plaintiffs demand a jury trial on all claims and issues so triable.

Respectfully Submitted,
Plaintiffs,
By their attorneys,

*/s/ John A. Donovan III*

John A. Donovan III, Esq., #5707
Judah H. Rome, Esq. #9711
Sloane and Walsh, LLP
652 George Washington Highway, Suite 302
Lincoln, RI 02865
Tel: 401-495-6796
jdonovan@sloanewalsh.com
jrome@sloanewalsh.com